Filed 3/8/16  P. v. Zavaleta CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B261527 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA129838) |
| v. | |
| ANGEL M. ZAVALETA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Patrick Timothy Meyers, Judge.  Affirmed.

Law Office of Zulu Ali and Zulu Ali, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, and Stephanie A. Miyoshi and William N. Frank, Deputy Attorneys General, for Plaintiff and Respondent.

_____

The jury found defendant and appellant Angel M. Zavaleta guilty of the following offenses: in count 1, possession of methamphetamine for the purpose of sale (Health & Saf. Code, § 11378)[1]; in count 2, possession of cocaine for the purpose of sale (§ 11351); and in count 3, possession of cocaine base for the purpose of sale (§ 11351.5). In a separate bench trial, the court found that defendant had: suffered two prior convictions as to counts 1 and 2 within the meaning of section 11370.2, subdivision (c); two prior convictions as to counts 2 and 3 within the meaning of section 11370.2, subdivision (a); and served a prior prison term as defined in Penal Code section 667.5, subdivision (b).

The trial court struck the prior prison term allegation pursuant to Penal Code section 1385. Probation was denied and defendant was sentenced to serve seven years in county jail, consisting of four years for the offense in count 3, enhanced by three years under section 11370.2, subdivision (a). Concurrent terms were imposed in counts 1 and 2 for the substantive offenses and section 11370.2, subdivision (c) enhancements.

Defendant contends the trial court erroneously denied his motions: (1) for permission to wear dress shoes and a tie at trial; (2) to suppress evidence found as a result of an unlawful search of his wife's home; (3) to suppress his statements because deputies coerced his waiver of *Miranda*[2] rights; and (4) for new trial on the bases that he was prejudiced by delayed disclosure of evidence, admission of his probation status, insufficient evidence to support the verdict, the jury's failure to deliberate, and the admission of his pre-*Miranda* statement and evidence found in the search.

We affirm.

---

[1] All further statutory references are to the Health and Safety Code, unless otherwise indicated.

[2] *Miranda v. Arizona* (1966) 384 U.S. 436, 444-445 (*Miranda*).

2

# FACTS

*Prosecution*

At about 1:00 a.m. on April 24, 2013, Los Angeles County Deputy Sheriff Angel Banuelos was on patrol in a marked vehicle when he observed defendant driving a van. Defendant and his wife, Maria Hernandez,[3] who was in the front passenger seat, were not wearing seatbelts. Defendant made a right turn without signaling or stopping at the intersection. Defendant then turned into an alley. Deputy Banuelos and his partner, Deputy Sanchez, illuminated the van, turned on their vehicle's red and white lights, and signaled for defendant to pull over.

Because they were in a high crime area, the deputies approached the driver's side of the vehicle with their guns drawn. Typically drivers have their hands in front of them or on the steering wheel in a traffic stop. Defendant reached toward the back, under the seat, indicating to the deputies that he could be hiding something. Deputy Banuelos asked defendant if he had a driver's license. Defendant responded that he did not. The deputy then asked defendant if he was on probation or parole. Defendant replied that he was on probation. He also told the deputy he was subject to search of his person and residence at all times as a condition of probation. Deputy Banuelos confirmed that defendant was on probation and subject to search conditions.

He then asked defendant to exit the van. Defendant was patted down and escorted to the patrol car. Defendant had a set of keys in his pocket, which Deputy Banuelos confiscated. He did not handcuff defendant or admonish him of his *Miranda* rights. At no point did defendant attempt to flee. The deputies did not use force against defendant. When asked where he lived, defendant pointed to a house a few doors away. Deputy Banuelos asked defendant if he was in possession of any narcotics in the house.

---

[3] To avoid confusion, we refer to Maria Hernandez as "Maria," and witness Nancy Hernandez as "Nancy."

3

Defendant responded that he had narcotics in the garage in a safe that was inside of a box. At the time the deputy asked defendant these questions defendant was seated in the patrol car, the patrol car door was open, and the deputy was standing beside the car. Maria was still seated in the van on the passenger side, and Deputy Sanchez was standing next to the van.

Deputy Banuelos asked Maria how she knew defendant and where she lived. She responded that he was the father of her four children, and that they lived in the house pointed to by defendant. The deputy asked if there were any narcotics in the house. Maria had no knowledge of drugs being in the home. She told Deputy Banuelos that she was "in charge" of the property. Deputy Banuelos asked if she would consent to a search. He did not advise Maria of her *Miranda* rights. She said there was nothing in the house, so she had no problem with the deputies searching. The deputy took Maria to a seat in the back of the patrol car. He left the car door open. Maria signed the consent to search while outside of the patrol car. She was not handcuffed, threatened, or arrested at any point.

Deputy Banuelos radioed for a supervisor and another unit to assist in the search. The deputies "cleared" the house and garage of people before the supervising sergeant arrived. They used defendant's keys to open the gate, house, and garage. Three children were asleep inside the house.

Sergeant Chahine arrived to take videos showing the condition of the garage before and after the search. The search was conducted after completion of the pre-search video. Deputy Banuelos found an unlocked safe inside a box on the floor of the garage. Inside were three plastic sandwich bags, later photographed by Los Angeles County Sheriff's Department Criminalist Edmund Ting and determined to contain 27.9 grams of methamphetamine, 13.91 grams of powder cocaine, and 52.3 grams of cocaine base. Also recovered in the search were small baggies of the type that are used for narcotics distribution and a scale.

Based on his experience, Deputy Banuelos opined that defendant possessed the drugs for sale. It would be unusual for a user to possess three kinds of drugs in such large

4

amounts. The packaging materials and scale are used in the sale of drugs. Defendant did not appear to be under the influence of drugs, nor did he possess paraphernalia for drug use, which also indicated the drugs were possessed for sale.

After discovering the contents of the safe, Deputy Banuelos handcuffed defendant and read him his *Miranda* rights. Defendant read and signed a waiver of his rights while seated in the back of the patrol car. On the waiver he wrote: "I told them that I possessed drugs in the garage of the house. The drugs belong to me. No one knew that they were there. I sell drugs due to the bad economy and I need money." Defendant verbally advised the deputy that he was selling drugs because he needed money. He accepted full responsibility and did not want Maria to get into trouble. Defendant did not complain of any injuries prior to booking.

*Defense*

### Maria Hernandez

Maria and defendant were married but separated. On the night of the incident, Maria and defendant went out to discuss their relationship. She was not certain where defendant was living. Maria lived in the house with their four children, which she leased with a friend. Defendant would come to the house to see the children, but he never went inside the house. He did not have keys to the house.

When the deputies pulled them over, they asked defendant and Maria if they had their seatbelts on. They said they did. Defendant was ordered to get out of the vehicle. He took off running pursued by Deputy Banuelos on foot and Deputy Sanchez in the patrol car. Maria ran to the front of the house. She saw defendant lying on the ground in the neighbor's front yard with two officers on top of him. The deputies handcuffed defendant and Maria and put them in the back seat of the patrol car. They left the couple and walked toward the back of the house.

After about an hour and a half, Deputy Banuelos came to Maria's side of the car and said, "I found it." Maria asked what he had found. He told her if she wanted to act stupid and lose her kids over defendant that was her choice. He told her to sign a waiver giving consent to search her house. Maria complied out of fear that she would lose her children. She was not handcuffed when she signed the waiver.

Maria testified that the key to the garage was hers, but defendant had the keys because he was driving. Maria did not keep narcotics in her house. She did not see defendant sign any documents that night. She was never arrested or charged with a crime.

### Nancy Hernandez

Nancy Hernandez saw two deputies on top of defendant in front of a nearby house. Defendant was on the ground in handcuffs and one of the deputies was hitting him with his knee. She recognized defendant as her neighbor's partner. He was crying. The deputies put defendant in the patrol car and spoke with Maria. They said that they would take the kids away from her if she did not tell the truth. They handcuffed Maria and placed her in the car with defendant. Then the deputies walked toward the property.

Nancy had only seen defendant two or three times before that night. She watched as defendant and Maria sat in the car for two to two-and-a-half hours. She saw defendant and Maria kissing. She never saw defendant fill out any paperwork.

### Lenivie Harris and William Jordan

Lenivie Harris and William Jordan had both filed complaints against Deputies Banuelos and Sanchez. The deputies searched Harris and his vehicle for no reason without his consent, and were rude to him. After the search, Harris's car was left in disarray and his wallet was missing. Harris's complaint was never resolved. He was not arrested or charged with a crime.

6

The deputies addressed Jordan with a racial epithet. They asked if he was on probation or parole. He was not. They pulled their guns on Jordan and handcuffed him roughly, after Jordan was noncompliant with their orders to get on the ground, and alternatively to put his hands on his vehicle. Jordan sat in the back of the patrol car for about an hour. Upon being released, Jordan was given a ticket for a broken light and for driving without a valid license. He was not arrested or charged with a crime. Jordan filed a complaint, but the matter was later closed because the investigation was "inconclusive." At the time of the incident, Jordan's driver's license had an irregularity that was later corrected by the Department of Motor Vehicles.

## DISCUSSION

### *Motion in Limine for Dress Attire*

Defendant contends that the trial court violated his constitutional right to a fair trial by denying his motion for permission to wear civilian attire at trial, including dress shoes and a tie. The court addressed defendant's motion before trial. In accord with the holding in *Estelle v. Williams* (1976) 425 U.S. 501, 505-506, that a defendant may not be compelled to stand before the jury in identifiable prison garb, the court partially granted the motion, allowing defendant to wear a suit, but denying defendant's request to wear dress shoes and a tie in consideration of the sheriff's security protocols.

Defendant's claim of constitutional error fails for three reasons. First, defendant waived the issue by expressly withdrawing his motion. The court advised defense counsel that defendant would be permitted to appear in a suit, but the court would not overrule the sheriff's policy regarding dress shoes and a tie. The court asked defense counsel if the court should rule on the motion, or "you can withdraw it." Counsel responded, "I can withdraw it, your honor." Withdrawal of a motion waives the issue on appeal. (*People v. Fudge* (1994) 7 Cal.4th 1075, 1097.)

7

Second, the issue fails on the merits. Defendant cites no authority that he has a constitutional right to wear dress shoes or a tie during trial. The trial court safeguarded defendant's rights by allowing him to wear a suit. While defendant has a right not to be compelled to appear in identifiable prison garb, he has no comparable constitutional right to demonstrably dangerous civilian attire.

Third, any error is harmless under *Chapman v. California* (1967) 386 U.S. 18, 24. (See *Estelle v. Williams*, *supra*, 425 U.S. at pp. 506-507.) The record contains no description of the shoes defendant wore at trial, nor is there any indication the jury saw his footwear. The evidence against defendant is overwhelming, considering that defendant confessed the controlled substances were his alone and he possessed them for sale. Error, if any, is harmless beyond a reasonable doubt.

*Miranda Waiver*

Defendant contends Deputies Banuelos and Sanchez coerced him into admitting there were narcotics belonging to him in his wife's garage by beating him and threatening Maria. He claims his waiver of his *Miranda* rights was not voluntary, such that any admissions made before or after he signed the waiver must be suppressed.[4]

**Law**

Pursuant to *Miranda*, "the prosecution may not use statements . . . stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." (*Miranda*, *supra*, 384 U.S. at p. 444.) A defendant must be advised of his or her Fifth Amendment rights

---

[4] Defendant does not argue that the statement he made prior to being read his *Miranda* rights was the product of a custodial interrogation in conjunction with this contention.

8

prior to custodial interrogation.  (*Id*. at pp. 444-479.)  "*Miranda* holds that '[the] defendant may waive effectuation' of the rights conveyed in the warnings 'provided the waiver is made voluntarily, knowingly and intelligently.'  [Citation.] . . . relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception."  (*Moran v. Burbine* (1986) 475 U.S. 412, 421 (*Moran*).)  "'The prosecution bears the burden of demonstrating the validity of the defendant's waiver by a preponderance of the evidence.' [Citations.]  [Citation.]"  (*People v. Williams* (2010) 49 Cal.4th 405, 425 (*Williams*).) "Only if the 'totality of the circumstances surrounding the interrogation' reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.  [Citations.]"  (*Moran*, *supra*, at p. 421.)  "On appeal, we conduct an independent review of the trial court's legal determination and rely upon the trial court's findings on disputed facts if supported by substantial evidence." (*Williams*, *supra*, at p. 425.)

### Proceedings

Prior to trial, defendant moved to suppress all evidence obtained in the search of Maria's home on the ground that the search and seizure was unlawful.  A special hearing was held pursuant to Penal Code section 1538.5.  In his motion, defendant also argued that his *Miranda* waiver was coerced.  The prosecution pointed out that the issue should have been raised in a motion in limine (*People v. Mattson* (1990) 50 Cal.3d 826, 850-852), but because the deputy was present to testify with respect to the motion to suppress and the *Miranda* motion, the court heard and ruled on the matters simultaneously.

At the hearing, Deputy Banuelos, Maria, Nancy, Harris, and Jordan's testimony was largely consistent with their later testimony at trial.  Nancy additionally testified that she could not write in English, but claimed to have written a declaration in English that

9

was attached to the motion to suppress.[5]  She referred to defendant as her "neighbor," to Maria and defendant as a "couple," and to the property as "theirs."  Maria referred to the house as "ours."  Jordan testified that he pleaded guilty to robbery when he was 16 years old.  He was charged and convicted as an adult.  The defense stipulated that defendant was on probation and subject to search conditions.

Defendant argued that Deputy Banuelos's testimony was not credible because it was inconsistent with Maria and Nancy's version of events.  He asserted that Harris and Jordan's testimony bolstered his claim that there was a pattern of the officers conducting searches unlawfully.  The search was unlawful because Maria was coerced into consenting to it.  Defendant's probation conditions extended only to a search of his own residence.  He did not live at the property, so it was not subject to the probation search.

The prosecution responded that defendant stipulated he was on probation and subject to search conditions.  Deputy Banuelos testified that both defendant and Maria told him that defendant lived at the house.  To the extent that Maria's testimony conflicted with the deputy's, she had a long-term relationship with defendant that biased her as a witness.  Nancy's testimony was not helpful even if credible because she did not see defendant sign a waiver of his *Miranda* rights.  It was therefore impossible to tell if defendant signed the waiver before or after the alleged beating.  Harris and Jordan's testimony was irrelevant because it was not verifiable.  Additionally, Jordan's testimony was suspect because he was given a ticket, did not comply with the deputies' orders, and had a conviction for a violent crime.

The court noted that Nancy testified defendant was "our neighbor down the street," which it found "jarring."  It ruled that the traffic stop was legitimate in light of the multiple moving violations and defendant's probation status.  The court found Nancy's testimony not credible, in part because she claimed to have written her declaration in English, although she testified that she could not write in English.  The court did not credit Maria's testimony because she was biased by her relationship with defendant and

---

[5] Nancy's declaration is not contained in the record on appeal.

her interest in the outcome of the case.  Although Harris and Jordan testified "coherently," their testimony had little relevance to the incident.  The trial court summarized:  "The court is the arbiter of the credibility of the witnesses and finds [Deputy] Banuelos'[s] testimony and his exhibits credible and Maria Hernandez'[s] and Nancy Hernandez'[s] testimony not as credible.  The motion to suppress evidence of the *Miranda* waivers by defendant, consent to search by Miss Maria Hernandez and derivative evidence is denied."

**Analysis**

Defendant's challenge to the voluntariness of his *Miranda* waiver is premised on Nancy's testimony that he was handcuffed and beaten while he lay on the ground, and Maria's testimony that she was threatened.  This testimony was expressly rejected by the trial court, with the court instead accepting Deputy Banuelos's version of the incident, a credibility determination binding on this court on appeal.  (*People v. Sauceda-Contreras* (2012) 55 Cal.4th 203, 217 ["'we must accept the trial court's resolution of disputed facts and inferences, as well as its evaluation of the credibility of witnesses where supported by substantial evidence'"].)  Deputy Banuelos testified that defendant did not flee at any time, the deputy never used force against defendant, and he did not handcuff him until the search revealed there were narcotics in the garage.  The interaction between defendant and the deputies, as described by Deputy Banuelos, contains no indicia of coercion that would undermine the voluntariness of defendant's *Miranda* waiver and subsequent confession.  The trial court did not err in denying the motion to suppress defendant's post-*Miranda* statements.

11

*Motion to Suppress Due to Unlawful Search and Seizure*

Defendant contends that the trial court erred by denying his motion to suppress evidence obtained in the search of the property. He argues Maria's consent to the search was coerced and involuntary.

### Law

"As the finder of fact in a proceeding to suppress evidence [citation], the superior court is vested with the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences in deciding whether a search is constitutionally unreasonable. [Citation.] Accordingly, in reviewing the instant suppression order, we consider the record in the light most favorable to [the prevailing party] since 'all factual conflicts must be resolved in the manner most favorable to the [superior] court's disposition on the [suppression] motion.' [Citation.] But while we defer to the superior court's express and implied factual findings if they are supported by substantial evidence, we exercise our independent judgment in determining the legality of a search on the facts so found. [Citations.]" (*People v. Woods* (1999) 21 Cal.4th 668, 673-674 (*Woods*).)

"The Fourth Amendment guarantees '[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures' and provides that 'no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.' (U.S. Const., Amend. IV.)" (*Woods*, *supra*, 21 Cal.4th at p. 674.) A search may not be conducted without a warrant, unless it has been carried out subject to a recognized exception. (*People v. James* (1977) 19 Cal.3d 99, 106.) Consent is such an exception. (*Ibid.*) "[P]robationers may validly consent in advance to warrantless searches in exchange for the opportunity to avoid service of a state prison term." (*Woods*, *supra*, at pp. 674-675.)

**Analysis**

Defendant's argument is based on Maria's testimony that defendant did not reside at the house. The trial court discredited Maria's testimony, instead accepting Deputy Banuelos's version of events as true. Deputy Banuelos testified that both defendant and Maria advised him defendant lived in the house, and Nancy referred to defendant as her neighbor. Substantial evidence supports the trial court's finding.

The search was lawful under the probation condition exception to the warrant requirement. Defendant stipulated that he was on probation at the time, and specifically postrelease community supervision. Penal Code section 3453 describes the conditions included in postrelease community supervision. Subdivision (f) of that section provides that "[t]he person, and his or her residence and possessions, shall be subject to search at any time of the day or night, with or without a warrant, by an agent of the supervising county agency or by a peace officer." Given defendant's search condition, there was no violation of his Fourth Amendment rights.

Assuming defendant did not reside in the house, he would have no personal expectation of privacy, and thus no basis for his Fourth Amendment claim. It is well settled that an individual cannot challenge the introduction of evidence obtained in an allegedly unlawful search unless that individual had a reasonable expectation of privacy in the object seized or the place searched. (*Rakas v. Illinois* (1978) 439 U.S. 128, 143, 148 (*Rakas*); *People v. Valdez* (2004) 32 Cal.4th 73, 122; *People v. Hoag* (2000) 83 Cal.App.4th 1198, 1203.) Mere presence on premises that are searched, without more, is insufficient to establish a reasonable expectation of privacy. (*Rakas*, at p. 148; see also *People v. Ayala* (2000) 23 Cal.4th 225, 255 [occasional presence on the premises as a guest or invitee is insufficient to confer an expectation of privacy]; *People v. Koury* (1989) 214 Cal.App.3d 676, 686 [same].) Nor can defendant challenge Maria's waiver vicariously. "'Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted.' [Citations.]" (*Rakas*, at pp. 133-134.)

13

*Motion for New Trial*

Following the verdicts, defendant moved for a for new trial pursuant to Penal Code section 1181, subdivision (6). Defendant argued: (1) the untimely disclosure of photographs of the drugs taken by Criminalist Ting was not cured by the trial court's instructions to the jury; (2) disclosure of his "parole" status was unduly prejudicial; (3) the evidence was insufficient to support his conviction; (4) his statements taken in violation of *Miranda* and the evidence seized from the garage should have been suppressed; and (5) the jury failed to deliberate. The trial court denied the motion.

We review the trial court's ruling on a new trial motion under a deferential abuse of discretion standard. (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 127.) As our Supreme Court has explained: "'"'The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears.'" [Citations.] '"[I]n determining whether there has been a proper exercise of discretion on such motion, each case must be judged from its own factual background.'" [Citation.]" (*People v. Delgado* (1993) 5 Cal.4th 312, 328.) At the same time, however, as to our ultimate prejudice inquiry, "article VI, section 13 of the California Constitution obliges the appellate court to conduct an independent examination of the proceedings to determine whether a miscarriage of justice occurred. As in any appeal from a final judgment, the reviewing court must determine for itself whether errors denied a fair trial to the party against whom the judgment was entered." (*People v. Ault* (2004) 33 Cal.4th 1250, 1261-1262, fns. omitted.)

**Delayed Disclosure**

Defendant contends the late disclosure of photographs of the drugs taken by Criminalist Ting interfered with his strategy to demonstrate that the prosecution did not

14

present adequate evidence to convict, depriving him of a fair trial.  He argues the trial court's instructions did not cure the harm.  We disagree.

### Law

Penal Code section 1054.1, subdivision (f) requires the prosecution to disclose "[r]elevant written or recorded statements of witnesses or reports of the statements of witnesses whom the prosecutor intends to call at the trial, including any reports or statements of experts made in conjunction with the case."  "'Absent good cause, such evidence must be disclosed at least 30 days before trial, or immediately if discovered or obtained within 30 days of trial.  [Citation.]'  [Citation.]  [¶]  Upon a showing both that the defense complied with the informal discovery procedures provided by the statute, and that the prosecutor has not complied with [Penal Code] section 1054.1, a trial court 'may make any order necessary to enforce the provisions' of the statute, 'including, but not limited to, immediate disclosure, . . . continuance of the matter, or any other lawful order.'  [Citation.]  The court may also 'advise the jury of any failure or refusal to disclose and of any untimely disclosure.'  [Citation.]  A violation of [Penal Code] section 1054.1 is subject to the harmless-error standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836.  [Citation.]"  (*People v. Verdugo* (2010) 50 Cal.4th 263, 280.)

### Proceedings

Just prior to trial the prosecution presented photographs of the confiscated drugs, which were taken by Criminalist Ting during his laboratory analysis.  Defense counsel objected to the late disclosure.  The trial court ruled that it would admit the evidence, but instruct the jury with CALCRIM No. 306.  The court asked if defense counsel would like to "make any further record."  Counsel declined, stating that the court's ruling was "fine."

15

The jury was instructed: "Both the People and the defense must disclose their evidence to the other side before trial, within the limits set by law. Failure to follow this rule may deny the other side the chance to produce all relevant evidence, to counter opposing evidence, or to receive a fair trial. [¶] An attorney for the People failed to disclose: any photocopies of the substances and packagings depicted in Exhibits 6, 7, 8, 11, 13, and 15 earlier than July 8, 2014. [¶] In evaluating the weight and significance of that evidence, you may consider the effect, if any, of that late disclosure."

In argument, defense counsel reminded the jury of the unfair surprise that the late disclosure caused. He catalogued extensively the evidence that the prosecution did not present, including the testimony of any of the three other deputies or the sergeant; the box, safe, scale, and baggies found with the drugs or any photographs of them; copies of the videos the sergeant purportedly took in the garage before and after the search; and photographs of the drugs in situ. He also argued that Deputy Banuelos lacked credibility, and had motive and opportunity to frame defendant for the crimes.

**Analysis**

In denying the motion for new trial based on delayed disclosure of the criminalist's photographs, the trial court noted that the record was "replete with descriptions of the narcotics seized from the garage, the quantities, appearance, number of packets, and it's common practice for the . . . sheriff's department [to] take charge of the narcotics in their packaging." Defendant's theory was that the narcotics were planted, and the court concluded that any delay in discovery did not undermine that aspect of the defense. In addition, the court's instruction on late discovery cured the problem of the disclosure being untimely.

The trial court's reasoning is sound, and we see no basis for concluding denial of the motion for new trial based on delayed discovery of the criminalist's photographs constitutes an abuse of discretion. The trial court remedied the late disclosure of the photographs with a jury instruction. We presume the jury understood and followed the

16

instruction when evaluating the photographs.  (See *People v. Gonzales* (2011) 51 Cal.4th 894, 940 ["It is fundamental that jurors are presumed to be intelligent and capable of understanding and applying the court's instructions."].)  Defendant does not suggest that he would have presented his case differently if the photographs had been disclosed earlier.  Disclosure was made prior to opening statements, before the defense had put forth any theories of innocence, presented any evidence, or cross-examined any witnesses.

If defense counsel believed he was inadequately prepared due to surprise, he had the opportunity to move for a continuance or a mistrial.  Counsel did neither.  After the trial court ruled that it would admit the evidence and instruct the jury with CALCRIM No. 306, defense counsel was asked if he would like to "make any further record."  Counsel stated the court's ruling was "fine."  The defense then pursued its argument that the prosecution failed to present sufficient evidence, along with other theories of innocence.  The record indicates that counsel made tactical decisions that were  not hampered by the delayed discovery.

Defendant's primary argument was that Deputy Banuelos was not credible.  If the jury did not accept Deputy Banuelos's testimony, it is highly unlikely that it would believe the photographs were of controlled substances possessed by defendant.  The defense theorized that the drugs were planted.  A photograph of drugs taken by a criminalist in a laboratory *after* they were removed from the crime scene would not corroborate their origin.


### Admission of Defendant's Probation Status


Defendant contends that the trial court abused its discretion in admitting evidence of his "parole status" under Evidence Code section 352.  As the trial court noted,

17

evidence was presented that defendant was on *probation*, not parole.[6] We conclude that, to the extent that defendant intended to challenge admission of his probation status, the trial court properly exercised its discretion in admitting the evidence, because any prejudice was outweighed by its probative value.

**Law**

"'Evidence that a defendant committed crimes other than those for which he is on trial is admissible when it is logically, naturally, and by reasonable inference relevant to prove some fact at issue . . . [Citations.] The trial court judge has the discretion to admit such evidence after weighing the probative value against the prejudicial effect. [Citation.]'" (*People v. Fuiava* (2012) 53 Cal.4th 622, 667 (*Fuiava*).) "The [court] . . . evaluates the risk of '*undue*' prejudice, that is, '"evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues,"' not the prejudice 'that naturally flows from relevant, highly probative evidence.' [Citations.]" (*People v. Padilla* (1995) 11 Cal.4th 891, 925, overruled by *People v. Hill* (1998) 17 Cal.4th 800 on another ground.) "'"[I]f the connection between the uncharged offense and the ultimate fact in dispute is not clear, the evidence should be excluded." [Citation.]' [Citations.]" (*Fuiava*, at p. 667.) "'No judgment shall be set aside, or new trial granted, in any cause, on the ground . . . of the improper admission or rejection of evidence, . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.' (Cal. Const., art. VI, § 13.)" (*People v. Rains* (1999) 75 Cal.App.4th 1165, 1170.) "[A] miscarriage of justice should be declared only when the court, after an examination of the entire cause, including the evidence, is of the opinion

---

[6] Defendant does not identify how he would be prejudiced, we presume it is because the evidence would have tended to show that he was guilty because he had a criminal disposition.

18

that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Ibid.*)

**Analysis**

The trial court did not abuse its discretion in denying a new trial on the theory it had erred in admitting evidence of defendant's probation status. Defendant's primary defense was that Deputy Banuelos had a pattern of stopping and searching people without cause, and had fabricated the crimes. In response, the prosecution was entitled to attempt to prove that Deputy Banuelos was acting in good faith, and that his version of events was accurate. The fact that Deputy Banuelos asked whether defendant was on probation or parole before taking him to the patrol car refuted the defense's position that the deputy acted arbitrarily and without legal justification. The information was relevant to the deputy's credibility and to the issue of whether the deputy's version of the seizure of the controlled substances accurately reflected what had occurred.

In addition to properly finding the evidence relevant, the trial court did not abuse its discretion under Evidence Code section 352 by admitting evidence of defendant's probationary status. "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) The court could reasonably conclude that the probative value of defendant's probation status was not "substantially outweighed" by its potential for undue prejudice. The jury was not advised of the nature of the offense leading to defendant being on probation. The prosecutor did not argue defendant should be convicted because he is a probationer. Defendant cannot establish undue prejudice under these circumstances.

Assuming the evidence was admitted in error, the trial court was not obligated to grant a new trial, as any error was harmless given the abundant evidence against defendant. The deputy testified that defendant told him where the drugs were located in

19

detail.  When the deputies searched the garage they found the drugs exactly where defendant indicated, along with numerous baggies and a scale.  Once the drugs were discovered, defendant again confirmed they were his.  He stated verbally and in writing that he was in possession of drugs and selling them because he needed the money due to the poor economy.  A criminalist confirmed that the substances confiscated were, in fact, methamphetamine, powder cocaine, and rock cocaine, and specified the amounts.  Based on his experience, Deputy Banuelos opined that possession of the drugs in those amounts, along with baggies and a scale commonly used in sales of drugs, was for the purpose of sale.  It is not reasonably probable that a result more favorable to the defendant would have been reached absent the purported error.  (*People v. Watson* (1956) 46 Cal.2d 818, 836.)


## Insufficient Evidence


Defendant contends that the trial court abused its discretion in finding substantial evidence supported the verdict.  This contention also lacks merit.

"In reviewing a motion for a new trial [based on insufficient evidence], the trial court must weigh the evidence independently.  [Citation.]  It is, however, guided by a presumption in favor of the correctness of the verdict and the proceedings supporting it.  [Citation.]  The trial court 'should [not] disregard the verdict . . . but instead . . . should consider the proper weight to be accorded to the evidence and then decide whether or not, in its opinion, there is sufficient credible evidence to support the verdict.'  [Citation.]"  (*People v. Davis* (1995) 10 Cal.4th 463, 523-524.)

We have detailed the abundant evidence against defendant.  The trial court did not abuse its discretion in determining that substantial evidence supported the jury's verdict.

## Jury's Failure to Deliberate

We agree with the Attorney General that defendant's conclusory statement that the jury failed to deliberate in a heading of his opening brief is insufficient to raise the issue. Issues not supported by argument or citation to authority are forfeited. (*Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99.)

## Admission of Pre-*Miranda* Statement and Search

Without citation to authority, defendant makes several conclusory contentions under the heading of "Admission of Defendant's Pre-*Miranda* Statement and Search was Prejudicial Error." The trial court did not err in denying a new trial on this basis.

Defendant has forfeited his contention that his pre-*Miranda* statements were obtained during a custodial interrogation, because he did not raise the issue before the trial court. (*People v. Zamudio* (2008) 43 Cal.4th 327, 354.) The issue presented to the trial court was that defendant's *Miranda* waiver was coerced by force used against him and threats to Maria. The determination of when the contact between the deputies and defendant evolved into a custodial interrogation requiring *Miranda* rights turns on factual determinations, which the trial court has not made. We reject the argument that the trial court was required to grant a new trial on the ground defendant's *Miranda* waiver was coerced; as stated earlier in this opinion, the trial court did not err in denying the motion to suppress based on an involuntary *Miranda* waiver.

We also reject the argument that defendant was entitled to a new trial because the trial court erred in denying his motion to suppress the fruits of the search in violation of the Fourth Amendment. The initial motion to suppress under the Fourth Amendment was properly denied at a special hearing before trial, as we have previously held. Moreover, defendant had a full and complete hearing in a special proceeding under Penal Code section 1538.5 before trial. He was not entitled to relitigate that ruling based on the identical facts. (*People v. Superior Court of Butte County* (1971) 4 Cal.3d 605, 611.)

21

The motion for new trial was properly denied to the extent it relied on previously litigated search and seizure issues under the Fourth Amendment.

## DISPOSITION

The judgment is affirmed.

KRIEGLER, J.

We concur:

TURNER, P. J.

BAKER, J.